Eric Lynch (#025049)
elynch@polsinelli.com
Anthony Merrill (#022598)
amerrill@polsinelli.com
**POLSINELLI PC**
One East Washington Street, Suite 1200
Phoenix, AZ 85004
Phone: (602) 650-2000
Fax: (602) 264-7033
*Attorneys for Defendant Horizon Human Services, Inc.*

### THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Riverport Insurance Company, a Minnesota corporation,<br><br>               Plaintiff,<br><br>vs.<br><br>Horizon Human Services, Inc., an Arizona corporation,<br><br>               Defendant. | Case No. 2:15-CV-00704-DLR<br><br>**DEFENDANT'S MOTION TO STAY THE PROCEEDINGS OR, IN THE ALTERNATIVE, TO DISMISS THE ACTION**<br><br>(Honorable Douglas L. Rayes)<br><br>**(Oral Argument Requested)** |

      Defendant, Horizon Human Services, Inc. ("Horizon") hereby moves the Court to stay all further proceedings pending resolution of the underlying tort action, *Eiden, et al. v. State of Arizona, et al.*, Case No. CV2014-012023 (the "Eiden Action"), or in the alternative, to dismiss this action. A district court should abstain from exercising jurisdiction over a declaratory action involving state-law issues if a related action with overlapping factual questions is pending in state court. *See Brillhart v. Excess Ins. Co. of Amer.*, 316 U.S. 491, 494 (1942) (finding that a federal court can decline jurisdiction over a declaratory action if a parallel action is pending in state court); *Amer. Nat. Fire Ins. Co. v. Hungerford*, 53 F.3d 1012, 1017 (9th Cir. 1995) ("[W]hen an ongoing state proceeding involves a state law issue that is predicated on the same factual transaction

1

or occurrence involved in a matter pending before a federal court, the state court is the more suitable forum for a petitioner to bring a related claim."), *overruled on other grounds by Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998).  Plaintiff Riverport Insurance Company's ("Riverport") declaratory action involves insurance coverage – a purely state-law issue – and turns on the same factual issues that are central to the Eiden Action.  The Ninth Circuit and its district courts favor abstention in actions like this one.[1]  The Court should follow suit here.

The Court may also stay this action under its power to control its docket, as going forward would cause judicial waste, multiply Horizon's costs, and risk inconsistent rulings.  *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (staying a case under the "power inherent in every court to control disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"); *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) (affirming a stay "pending resolution of independent proceedings which may bear upon the case").  The Ninth Circuit's factors for deciding the issue support staying this action.

In sum, the Court should stay or dismiss this action because it (1) needlessly seeks a determination of purely state-law issues that could have been raised in state court; (2) overlaps the Eiden Action, causing judicial waste; and (3) creates inequity and hardship for Horizon by forcing it to duplicate its litigation efforts and by exposing it to the risk of inconsistent rulings.

## I.   BACKGROUND

In this action, Riverport seeks a declaration that it has no duty to defend or indemnify Horizon in the Eiden Action, which was filed in the Maricopa County

---

[1] The Court can abstain from exercising jurisdiction by dismissing the action or staying the proceeding pending the resolution of the Eiden Action.  *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 n.2 (1995) ("[W]here the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy.")

Superior Court on October 3, 2014.  In the Eiden Action, several plaintiffs have alleged that Horizon, along with multiple other defendants, are liable for negligence, gross negligence, and medical negligence, stemming from an incident involving Horizon's former client, Joseph Caine Cecil ("Cecil").  Horizon, a non-profit healthcare provider, provided behavioral health services to Cecil after he was released from the Arizona State Hospital, but Horizon later discontinued those services at Cecil's persistent request.  In October 2013, Cecil had a psychotic episode during which he killed his mother and seriously injured his aunt.

Cecil's aunt and the survivors of Cecil's mother (the "Eiden Plaintiffs") brought the Eiden Action against Horizon, two other health service providers, and the State of Arizona, alleging that all of the parties were negligent and proximately caused the Eiden Plaintiffs' injuries.  The facts have not been fully developed to this point, so the *Eiden* court has not yet addressed whether the Eiden Plaintiffs' claims have any merit.

In November 2013, Riverport issued a professional liability policy, Policy No. RIC0013487 (the "Policy"), to Horizon with an effective date of January 22, 2014.  The Policy included a Prior Acts Endorsement, which extended coverage to:

> any act, error, or omission, or violation which occurred prior to 01/22/2014, but not before 01/22/2005, provided [Horizon], at the inception of this coverage, had no knowledge of any claim or suit, or knowledge of any act, error, omission or violation which might reasonably be expected to result in a claim.

[Policy, at RPPR 79 13 06 05, attached hereto as Exhibit A.[2]]  Riverport acknowledges the Prior Acts Endorsement but contends that it provides no coverage because Horizon allegedly knew of an act, error, omission, or violation that might reasonably have been expected to result in a claim.  Complaint ¶¶ 53-55.  Specifically, Riverport says that

---

[2]   Horizon notes that when Riverport quoted the Prior Acts Endorsement in its Complaint (¶ 37), it inadvertently quoted the Commercial General Liability Prior Acts Endorsement (which extended coverage only to acts that occurred after June 30, 2012) instead of the Professional Liability Prior Acts Endorsement (which extended coverage to acts that occurred after January 22, 2005).  Riverport's error has no effect here, as the actions at issue here occurred after June 30, 2012.

3

Horizon should have expected a claim because a Horizon case manager visited Cecil the morning of the episode, and they talked about his multiple requests to stop services. *Id.*

Both this action and the Eiden Action turn on the same facts: what Horizon knew and did with respect to Cecil and whether Horizon's actions had any causal link to Cecil's episode. Indeed, the factual allegations in Riverport's Complaint were simply parroted from the Eiden Plaintiffs' complaint. This Court and the *Eiden* court will thus be treading the exact same ground, risking inconsistent rulings, if this action proceeds.

## II.    ARGUMENT

### A.    The Court Should Dismiss This Action Because It Involves Purely State-Law Issues that Turn On the Same Factual Questions at the Heart of the Eiden Action.

In the landmark case of *Brillhart v. Excess Insurance Company of America*, the U.S. Supreme Court ruled that, under the Federal Declaratory Judgment Act, 28 U.S.C. § 400 ("DJA"), a federal court has discretion to abstain from exercising jurisdiction over a federal declaratory judgment action, when doing so will:

(1)    avoid needless determination of state law issues;
(2)    discourage litigants from filing declaratory actions as a means of forum shopping; and
(3)    avoid duplicative litigation.

316 U.S. 491, 494 (1942); *Nat. Union Fire Ins. Co. of Pittsburgh, Pa. v. Aero Jet Servs., LLC*, 2011 WL 4708857, at *2 (D. Ariz. Oct. 7, 2011) (setting forth factors). The Ninth Circuit has given district courts six additional factors to consider:

(4)    whether the declaratory action will settle all aspects of the controversy;
(5)    whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue;
(6)    whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a "res judicata" advantage;
(7)    whether the declaratory action will result in entanglement between the federal and state court systems;
(8)    the convenience of the parties; and
(9)    the availability and relative convenience of other remedies.

*Dizol*, 133 F.3d at 1225 n.5.

4

When applying this list of factors (the "*Brillhart* factors"), there is a presumption that a district court should abstain from exercising jurisdiction if a parallel action involving the same issues and parties is pending in state court. *Dizol*, 133 F.3d at 1225. This presumption is equally triggered by a state court action involving different parties and legal issues if the two actions raise overlapping factual questions and the federal declaratory action could have been brought in state court. *Hungerford*, 53 F.3d at 1017 (finding a presumption in favor of abstention where "an ongoing state proceeding involves a state law issue that is predicated on the same factual transaction or occurrence involved in a matter pending before a federal court"); *Golden Eagle Ins. Co. v. Travelers Cos.*, 103 F.3d 750, 754-55 (9th Cir. 1996) (same), *overruled on other grounds by Dizol*, *supra*; *Aero Jet*, 2011 WL 4708857, at *3 (same); *Owners Ins. Co. v. Monte Vista Hotel*, 2010 WL 447343, at *3 (D. Ariz. Feb. 4, 2010) (same).

The presumption in favor of abstention applies here because this action raises the same factual questions that are central to the Eiden Action and involves purely state-law issues that could have been raised in state court under the Arizona Declaratory Judgments Act, A.R.S. §§ 12-1831, et seq. Even without this presumption, the *Brillhart* factors weigh heavily in favor of abstaining from exercising jurisdiction.

1. **There is a Presumption in Favor of Abstention Because this Action Overlaps with the Eiden Action and Could Have Been Brought in State Court.**

Faced with similar facts, the Ninth Circuit has found a presumption in favor of abstention where a declaratory action regarding insurance coverage raised "questions of fact that overlap those involved in the [underlying] state court proceedings." *See Employees Reins. Corp. v. Karussos*, 65 F.3d 796, 800-01 (9th Cir. 1995), *overruled on other grounds by Dizol*, *supra*. In *Karussos*, an insurer brought a federal action against the policyholder seeking a declaration of no coverage because "prior to the effective date of his policy, [the policyholder] became aware that the [] dispute would lead to a claim or suit against him." *Id.* at 800 (internal quotation omitted). The Ninth Circuit

5

ruled that the action "turn[ed] on factual questions that overlap with those at issue in the underlying state court litigation," including questions about the relationship between the policyholder and underlying tort plaintiff and when the dispute began.  *Id.*  The Court found a presumption in favor of abstention because of the factual overlap and remanded the case with instructions to dismiss for lack of jurisdiction.  *Id.* at 800-01.

This district applied the same presumption in favor of abstention in *National Union Fire Insurance Co. of Pittsburgh, PA v. Aero Jet Services, LLC*, where an insurer sought a declaration that it had no duty to defend or indemnify the policyholder in the underlying tort action.  2011 WL 4708857, at *1.  The *Aero Jet* court reiterated the presumption in "favor of state court adjudication when the factual issues in the underlying state court proceeding are the same" and "there was a procedural vehicle available to the insurance company in state court[.]"  *Id.* at *3.  The court found that both the federal declaratory action and the underlying tort action turned, in part, on whether the policyholder acted intentionally and that the insurer could have filed its declaratory action in Arizona state court under the Arizona Declaratory Judgments Act, A.R.S. § 12-1831.  *Id.* at *3-4.  The court found that these facts triggered the presumption in favor of abstention and dismissed the action.  *Id.* at *4.

As in *Karussos* and *Aero Jet*, this action and the Eiden Action arise out of the same factual occurrence and share many of the same issues.  For example, to determine whether Horizon knew of "an act, error, omission or violation which might reasonably be expected to result in a claim or suit" prior to the effective date of the Policy, the Court must look to factors such as the scope of Horizon's duty to the Eiden Plaintiffs, whether Horizon had reason to believe that it had breached a duty, and whether the alleged actions had a clear causal link to Cecil's episode.  S*ee Ettinger & Assocs., LLC v. Hartford/Twin City Fire Ins. Co.*, 22 F. Supp. 3d 447, 455 (E.D. Pa. 2014) (finding that the policyholder might reasonably have expected a claim where it had reason to believe that it had breached a professional duty); *Cardenas v. Twin City Fire Ins. Co.*, 2014 WL 4699670, at *5 (N.D. Ill. Sept. 24, 2014) (finding that the policyholder might

50583246.5

reasonably have expected a claim where there was a clear causal link between the policyholder's actions and the alleged injuries).  As shown in the table below, these are the same issues that the Eiden Plaintiffs will address in their negligence action:

| Issues Raised by this Action | Issues Raised by the Eiden Action |
| --- | --- |
| Did Horizon have any reason to believe that it breached a duty? | What was the scope of Horizon's duty to the Eiden Plaintiffs? |
| | Did Horizon breach its duty to the Eiden Plaintiffs? |
| Was there a clear causal link between Horizon's alleged actions and Cecil's episode? | Did Horizon's alleged breach proximately cause the Eiden Plaintiffs' injuries? |
| | To what extent were the Eiden Plaintiffs' injuries caused by their own negligence, the negligence of another defendant in the Eiden Action, or some other party? |

Further, these issues are fraught with factual questions that both Riverport and the Eiden Plaintiffs will have to address.  To name just a few:

- What were Horizon's contractual duties in treating Cecil?
- What were Horizon's statutory duties in treating Cecil?
- What were the details of Cecil's clinical history?
- What did Horizon know about Cecil's clinical history?
- What are the protocol, statutory requirements, and industry standards for treating a patient with a clinical history like Cecil's?
- What are the protocol, statutory requirements, and industry standards for treating a patient who repeatedly asks for a discontinuation of services?
- What are the protocol, statutory requirements, and industry standards, if any, for discontinuing services?
- What are the protocol, statutory requirements, and industry standards, if any, for requesting court-ordered treatment?

7

- What was the interrelationship between Horizon and the other defendants in the Eiden Action?

- What role did the other defendants in the Eiden Action play in Cecil's treatment?

- What is the causal link between Horizon's alleged actions and Cecil's episode?

- What was the nature of Cecil's relationship with his mother and his aunt?

- Did Horizon communicate with Cecil's mother or aunt before episode?

- What happened on the day of Cecil's episode?

- What events led up to the episode?

- Were there factors that led to the episode or other details about the episode that are not discussed in the Complaint?

This deep overlap of issues is precisely the situation that gave rise to the presumption applied in *Karussos* and *Aero Jet*. Further, as the *Aero Jet* court pointed out, an insurer can bring a declaratory action regarding coverage in state court under the Arizona Declaratory Judgments Act, A.R.S. § 12-1831. The Court should thus abstain from exercising jurisdiction over this matter unless Riverport can rebut the presumption in favor of abstention, which it cannot.

### 2. Riverport Cannot Rebut this Presumption Because the *Brillhart* Factors Weigh Heavily in Favor of Abstention.

To overcome the presumption in favor of abstention, Riverport has the heavy burden of proving that the *Brillhart* factors favor moving forward in spite of the pending Eiden Action. *Cont'l Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1373-74 (9th Cir. 1991) (finding that, on the facts of that case, the *Brillhart* factors did not rebut the presumption in favor of state court adjudication court), *overruled on other grounds by Dizol*, *supra*. Here, the *Brillhart* factors plainly support abstention.

### a. This Action Would Require the Needless Determination of State Law Issues.

When exercising jurisdiction over a declaratory action would result in the needless determination of state law issues, this factor by itself merits abstention. *R.R.*

*Street & Co., Inc. v. Transport Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011) ("In prior cases, we have recognized that needless determination of state law issues alone may support remand [of a removed declaratory action].").  Riverport's declaratory action is a prime example of this *Brillhart* factor.

First, this action involves insurance coverage, an issue that Congress has explicitly left up to the states.  *Robsac*, 947 F.2d at 1371 (finding needless determination of state law in a coverage action because insurance is "an area that Congress expressly left to the states through the McCarran-Ferguson Act").  Second, this action could have been brought in state court.  *Aero Jet*, 2011 WL 4708857, at *4 (finding a needless determination of state law because the insurer "could have filed its action in state court under the Arizona Declaratory Judgment statute, A.R.S. § 12-831"); *U-Haul Intern., Inc. v. Nat. Union Fire Ins. Co. of Pittsburgh, Pa.*, 2011 WL 4104880, at *4 (D. Ariz. Sept. 15, 2011) (finding a needless determination of state law because "the state courts, upon proper motion, would be better positioned to determine this insurance coverage matter").  Finally, when the basis for jurisdiction is diversity of citizenship – as it is here – the "federal interest is at its nadir" and "the *Brillhart* policy of avoiding unnecessary declarations of state law is especially strong[.]"  *Robsac*, 947 F.2d at 1371; *see also Maryland Cas. Co. v. Witherspoon*, 993 F.Supp.2d 1178, 1183 (C.D. Cal. 2014) ("A 'needless determination of state law' may involve . . . a lawsuit with no compelling federal interest (*e.g.*, a diversity action).").  Thus, this critical *Brillhart* factor weighs heavily in favor of abstention.

### b. Moving Forward Will Cause Duplicative Litigation and Will Entangle State and Federal Court Systems.

The overlapping issues in this action and the Eiden Action will force Horizon to litigate the same issues on two fronts, multiplying Horizon's costs and creating a risk of inconsistent rulings.  *John Deere Ins. Co. v. Sanders Oldsmobile-Cadillac, Inc.*, 2007 WL 2317150, at *4 (E.D. Cal. Aug. 9, 2007) (abstaining because a policyholder "should not be forced to litigate on two fronts," and an insurer "should not be allowed to force

9

its insured to litigate against their insurer [] while simultaneously purporting to represent their interests in [the underlying tort action]"); *Monte Vista*, 2010 WL 447343, at *4 (finding duplicative litigation because "the ultimate legal determination in each [action] depends on the same facts").  For example, this Court and the *Eiden* court may reach different conclusions about the scope of Horizon's duty to the Eiden Plaintiffs, whether Horizon's actions were reasonable, or whether those actions had anything to do with Cecil's episode.

Inconsistent rulings would also entangle the state and federal court systems.  *See Monte Vista*, 2010 WL 447343, at *5 (D. Ariz. Feb. 4, 2010) (finding entanglement where going forward would "raise[] the spectre of possible inconsistent adjudications"); *John Deere*, 2007 WL 2317150, at *3 (stating that the issues in the declaratory action were "intertwined with issues in the underlying actions" and that "the real possibility of inconsistent factual findings weighs in favor of [abstention]."). This action further risks entanglement of state and federal court systems because Riverport seeks a declaration that it is no longer responsible for defending Horizon in a state court action.  *Owners Ins. Co. v. Young's Corral LLC*, 2011 WL 3759497, at *4 (D. Ariz. Aug. 25, 2011) ("[T]he declaratory judgment action risks entangling the federal and state court systems, as Plaintiff is requesting that this Court declare that it is no longer responsible for defending Young's Corral in the underlying case.").

Like the previous factor, these factors carry substantial weight in the *Brillhart* analysis.  *See Witherspoon*, 993 F. Supp. 2d at 1185 (finding that an "overlap in issues weighs heavily against allowing [a] declaratory action to go forward because it entangles the Court with the underlying state court action as well as results in duplicative litigation").  Accordingly, these *Brillhart* factors strongly favor abstention.

### b.    The Remaining *Brillhart* Factors Favor Abstention.

Going forward with this action would encourage forum-shopping because Riverport filed in federal court when it could have brought this declaratory action in state court under the Arizona Declaratory Judgments Act, A.R.S. §§ 12-831, et seq.  *See*

1   *Hungerford*, 53 F.3d at 1018 ("Because [the plaintiff] could have brought this action in

2   state court through California's own declaratory judgment provision, we should not

3   endorse its attempt to obtain a federal forum to provide the remedy it seeks."); *Monte*

4   *Vista*, 2010 WL 447343, at *3 (same); *John Deere Ins. Co. v. Sanders Oldsmobile-*

5   *Cadillac, Inc.*, 2007 WL 2317150, at *3 (E.D. Cal. Aug. 9, 2007) ("An inference of

6   forum shopping can be implied from the fact that Plaintiff filed in federal district court

7   despite the opportunity to file in state court.").   Thus, this *Brillhart* factor supports

8   dismissal.

9          Granting Riverport declaratory relief will not settle all aspects of the controversy

10  arising from the Eiden Plaintiffs' injuries because the Eiden Action is still ongoing.  *See*

11  *Young's Corral*, 2011 WL 3759497, at *4 (finding that "declaratory relief would not

12  settle all aspects of the broader controversy, as the underlying case between Young's

13  Corral and Ms. Begay's survivors must still be litigated"); *Monte Vista*, 2010 WL

14  447343, at *4 (finding that declaratory relief would not settle all aspects of the

15  controversy because "the damages in the state tort case would remain outstanding").

16  Moreover, if the Court were to find that Riverport must defend Horizon in the Eiden

17  Action, the Court would have to stay the action on the duty-to-indemnify issue until the

18  Eiden Action is resolved because, as discussed above, the indemnification issue turns on

19  facts that will be developed in the Eiden Action.  *See Aero Jet*, 2011 WL 4708857, at *5

20  (stating that the declaratory action would not settle all aspects of the controversy "if the

21  Court should find a duty to defend, [because] it would have to stay the action with

22  respect to indemnification until the liability issues are resolved in state court").  Thus,

23  this factor favors abstention.

24         Exercising jurisdiction over this action would serve no useful purpose because it

25  could have been brought in state court.  *Aero Jet*, 2011 WL 4708857, at *5 ("[T]his

26  Court's jurisdiction will not serve a useful purpose because a declaratory judgment

27  could readily be obtained in state court.").  Accordingly, this factor favors abstention.

28

Riverport's federal declaratory action can be seen as procedural fencing and an effort to preempt any attempt on Horizon's part to file a declaratory action in state court. *Budget Rent-A-Car v. Crawford*, 108 F.3d 1075, 1081 (9th Cir. 1997) (finding that this factor favors abstention "when a federal plaintiff seeks declaratory relief in anticipation that a related state court proceeding may be filed"), *overruled on other grounds by Dizol*, *supra*. Thus, this factor weighs in favor of abstention.

The balance of convenience favors abstention. Riverport will not be inconvenienced by dismissal because the state court is located just down the street from the district court, should Riverport choose to bring this action in state court. By contrast, going forward with this action will inconvenience Horizon by forcing it to litigate the same factual issues in two separate courts and face the risk of inconsistent rulings. This factor thus favors abstention.

Finally, a better alternative remedy exists because Riverport can bring its declaratory action in state court. *See Young's Corral*, 2011 WL 3759497, at *4 ("[A] better remedy exists in this case, namely the settlement of all controversies in state court."); *Monte Vista*, 2010 WL 447343, at *5 ("[I]t would be much more efficient for Owners Insurance to simply file a declaratory action in state court in accordance with the Arizona Declaratory Judgment Act."). In sum, all of the *Brillhart* factors support abstention.

## B.   The Court Should Use its Inherent Power to Control its Docket to Stay this Action in the Interests of Fairness and Judicial Economy.

A court's "power to stay proceedings is incidental to the power inherent in every court to control disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163 (1936); *see also ATSA of Cal., Inc. v. Cont'l Ins. Co.*, 702 F.2d 172, 176 (9th Cir. 1983) ("A trial court has authority to stay proceedings in the interest of saving time and effort for itself and litigants[.]"). A court may, in the interests of judicial efficiency and fairness, stay an action pending resolution of a separate, related proceeding. *See*

50583246.5

*Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) (affirming a stay pending the results of an arbitration; "[A] trial court may find it efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which may bear upon the case."). Staying an action is appropriate even where the issues in the separate proceedings are not determinative of the action before the court. *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) ("This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court.").

The competing interests that a district court must weigh in deciding whether to grant a stay include: (1) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay[,]" (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "possible damage which may result from the granting of a stay[.]" *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). Courts have also considered whether "simultaneous litigation will increase the cost of the overall litigation in the near term" and whether "it is at least reasonably possible that resolution of the [separate proceeding] will lead to prompt resolution of the [proceeding before the court], saving litigation costs and court resources in the long term." *In re First Solar Derivative Litig.*, 2012 WL 6570914, at *2 (D. Ariz. Dec. 17, 2012) (granting a stay in a derivative lawsuit pending class action proceedings arising from the same events). Further, courts have found sufficient reason to stay an action where simultaneous litigation in a separate proceeding forces the movant to pursue potentially divergent strategies in each proceeding. *Id.* (gathering cases). All of these factors favor staying this action.

13

50583246.5

## A.  <u>Staying this Action Will Further the Orderly Course of Justice.</u>

The Ninth Circuit has addressed the exact issue raised in this Motion – whether staying an action is appropriate when separate proceedings bear on the action – and has held that a stay is proper in these circumstances on the ground of judicial efficiency. *See, e.g.*, *Mediterranean Enters.*, 708 F.2d at 1465 (finding it appropriate for a trial court to "stay of an action before it, pending resolution of independent proceedings which may bear upon the case") (citing *Leyva*, 593 F.2d at 863-64).

In *Leyva*, for example, the Ninth Circuit affirmed a district court's decision to stay an action until after a related arbitration, based on the district court's "powers to control its docket and to provide for the prompt and efficient determination of the cases pending before it." *Leyva*, 593 F.2d at 863.  The *Leyva* court found that the arbitrator's "findings, as well as the documents and testimony produced during the arbitration hearing, may be of valuable assistance to the court in resolving the [statutory] claims[.]" *Id.*  The *Leyva* court further stated that "[i]t would waste judicial resources and be burdensome upon the parties if the district court in a case such as this were mandated to permit discovery, and upon completion of pretrial proceedings, to take evidence and determine the merits of the case at the same time as the arbitrator is going through a substantially parallel process." *Id.* at 864.

Similarly, in *Mediterranean Enterprises*, the Ninth Circuit determined that only certain claims before the district court were subject to arbitration but that the district court did not abuse its discretion in staying all of the claims until after the arbitration because "[b]y deciding those issues necessary to resolve counts 1, 2 and 4, the arbitrator might well decide issues which bear in some way on the court's ultimate disposition of counts 7, 8 and 9." 708 F.2d at 1465.  The Ninth Circuit made clear that this approach "applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Id.*

As in *Leyva* and *Mediterranean Enterprises*, the Eiden Action will involve much of the same evidence and many of the same factual issues that will come up in this action.  Resolution of the Eiden Action will thus drastically simplify the issues in this case and will allow this Court to take advantage of the *Eiden* court's findings and the evidence produced in that action.  By contrast, resolving these factual issues at the same time the *Eiden* court is going through parallel processes is a waste of judicial resources, not to mention a major burden to Horizon.

### B.     Moving Forward Will Cause Horizon Inequity and Hardship.

As discussed above, litigating this action and the Eiden Action simultaneously will cause Horizon to incur the costs of defending the same issues and engaging in the same discovery in two separate actions; will expose Horizon to the risk of obtaining inconsistent rulings; and will force Horizon to pursue divergent strategies in the two matters, as it tries to establish coverage for Horizon's liability here while arguing that no liability attaches in the Eiden Action.  *John Deere*, 2007 WL 2317150, at *4 (finding that a policyholder "should not be forced to litigate on two fronts" and that an insurer "should not be allowed to force its insured to litigate against their insurer [] while simultaneously purporting to represent their interests in [the underlying tort action]").  This factor thus favors staying this action.

### C.     Staying this Action Will Benefit Riverport.

If the stay is granted, Riverport (along with Horizon and the Court) will benefit from having the issues in this action simplified and potentially even resolved if the *Eiden* court rules in Horizon's favor.  In any event, any alleged prejudice that a stay might cause Riverport is outweighed by the significant hardship Horizon will experience from having to litigate the same issues simultaneously on two fronts.

## III.   CONCLUSION

Horizon respectfully requests that the Court grant this Motion and stay this action until the resolution of the Eiden Action or, in the alternative, dismiss the action.

50583246.5

1

Dated this 12th day of August, 2015.

2

**POLSINELLI PC**

3

4

By: _/s/ Anthony Merrill_

5

Eric Lynch
Anthony Merrill

6

One E. Washington St., Ste. 1200
Phoenix, AZ 85004

7

*Attorneys for Defendant*
*Horizon Human Services, Inc.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF SERVICE**

I certify that on August 12, 2015, I electronically transmitted a copy of foregoing document to the Clerk of Court, by using the CM/ECF System for filing.


By: _/s/Christine M. Ekstrom_

50583246.5