Eric Lynch (#025049)
elynch@polsinelli.com
Anthony Merrill (#022598)
amerrill@polsinelli.com
**POLSINELLI PC**
One East Washington Street, Suite 1200
Phoenix, AZ 85004
Phone: (602) 650-2000
Fax: (602) 264-7033
*Attorneys for Defendant Horizon Human Services, Inc.*

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Riverport Insurance Company, a Minnesota corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Horizon Human Services, Inc., an Arizona corporation,<br><br>Defendant. | Case No. 2:15-CV-00704-DLR<br><br>**REPLY IN SUPPORT OF MOTION TO STAY THE PROCEEDINGS OR, IN THE ALTERNATIVE, TO DISMISS THE ACTION**<br><br>(Honorable Douglas L. Rayes) |

To decide this action on the merits, this Court must make factual determinations about whether Horizon's treatment of Cecil met the standard of care and whether it caused Cecil's episode. These very same issues confront the *Eiden* court. This overlap triggers a presumption in favor of staying this action until the resolution of the Eiden Action or dismissing this action altogether. Riverport fails to rebut this presumption.

Instead, Riverport attempts to dodge overwhelming precedent by wrongly claiming that the presumption has been superseded. Riverport then misleadingly argues that this action does not raise factual questions about Horizon's treatment of Cecil. Yet Riverport has made numerous allegations about that treatment, disclosed 40 witnesses expected to testify on the treatment, made document requests related to the treatment, and relies heavily on an investigation of the treatment. Clearly Riverport downplays these factual issues merely to survive this motion while intending to litigate them later.

1

Riverport ignores the realities of this dispute by superficially suggesting that a few of the *Brillhart* factors may be neutral while failing to rebut the presumption of abstention. Riverport also argues that the Court should refrain from staying this action under its inherent power because requiring Riverport to continue fulfilling its contractual obligation to defend Horizon in the Eiden Action is "fundamentally unfair" and because forcing Horizon to simultaneously litigate overlapping lawsuits in two different courts will promote judicial economy. Neither argument has any merit.

In sum, this action and the Eiden Action turn on the very same factual issues regarding Horizon's treatment and its causal relationship to Cecil's episode. Thus, a strong presumption exists in favor of abstaining from exercising jurisdiction over this action. Riverport has the burden of rebutting that presumption. It has failed to do so.

### I. The Ninth Circuit Presumes Abstention When a Declaratory Action and an Underlying State Court Action Raise Overlapping Fact Issues.

Riverport incorrectly argues that the Ninth Circuit abandoned the presumption of abstention articulated in *Amer. Nat'l Fire Ins. Co. v. Hungerford* for declaratory actions that turn on the same fact issues as their underlying tort actions. [Response, Doc. 33 at 2 (quoting *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998)).[1]] The Ninth Circuit, this District, and other jurisdictions overwhelmingly agree that *Dizol* did not overrule this presumption. *See, e.g.*, *Huth*, 298 F.3d at 803 (holding that *Dizol* explicitly limited its holding to a different issue); *Nat. Union Fire Ins. Co. of Pittsburgh, PA v. Aero Jet Servs., LLC*, 2011 WL 4708857, at *3 (D. Ariz. Oct. 7, 2011) (holding that *Dizol* did not overrule *Hungerford* or its progeny on this issue); *Owners Ins. Co. v. Monte Vista Hotel*, 2010 WL 447343, at *3 & n.2 (D. Ariz. Feb. 4, 2010) (stating that *Hungerford*'s analysis on abstention remains "controlling Ninth Circuit precedent").

---

[1] The *Dizol* court held that a district court need not *sua sponte* determine whether to decline jurisdiction over a declaratory action, which overruled its prior cases but only on this issue. *Dizol*, 133 F.3d at 1223-24; *see also Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 803 (9th Cir. 2002) (recognizing *Dizol*'s limited holding).

2

1  As to the *Dizol* language Riverport quotes – "there is no presumption in favor of
2 abstention in declaratory actions generally, nor in insurance coverage cases specifically"
3 – the Ninth Circuit clarified that this "merely affirms the well-accepted rule that the
4 decision whether to exercise jurisdiction over a declaratory action lies in the sound
5 discretion of the district court." *Huth*, 298 F.3d at 803.  In other words, a district court's
6 discretion is not hampered by a blanket presumption attaching to <u>all</u> declaratory actions
7 or <u>all</u> insurance actions.  In fact, *Dizol* expressly reiterated the presumption of
8 abstention in declaratory actions involving the same issues and parties as a pending state
9 action.  133 F.3d at 1225.  More importantly, *Dizol* did "not negate the equally valid
10 considerations expressed in *Hungerford* and other Ninth Circuit cases that favor state
11 court adjudication when the factual issues in the underlying state court proceeding are
12 the same." *Aero Jet*, 2011 WL 4708857, at *3.[2]

13 Riverport cites only two cases for its flawed position, *GEICO General Insurance
14 Co. v. Tucker* and *American Family Mutual Insurance Co. v. Homebuyer Group, LLC*.
15 These cases, however, actually undermine Riverport's argument.  *Tucker* recognized
16 that *Dizol* reaffirmed a presumption of abstention when a state court action involves the
17 same issues and parties, contradicting Riverport's blanket claim that no presumptions
18 attach in insurance coverage cases.  *See* 2014 WL 1713766, at *2 (D. Ariz. Apr. 30,
19 2014).  Although *Homebuyer* reasoned that *Dizol* scrapped all presumptions in the
20 context of insurance cases, that position has been consistently refuted by this District
21 and other jurisdictions.  *See* 2012 WL 6200618, at *3 (D. Ariz. Dec. 12, 2012).  Further,
22 even *Homebuyer* acknowledged that a "court should nonetheless refrain from exercising
23 its jurisdiction if resolving the insurance coverage questions requires the court to

---

[2] *See also Cornerstone Nat'l Ins. Co. v. Itule*, 2013 WL 4051642, at *4 (D. Ariz. Aug. 12, 2013) (recognizing the survival of the *Hungerford* rule); *Catholic Foreign Mission Soc. of Amer., Inc. v. Arrowood Indem. Co.*, 76 F.Supp.3d 1148, 1157-58 (D. Haw. 2014) (same); *Travelers Cas. and Sur. Co. v. Roman Catholic Bishop of Helena*, 2013 WL 1192401, at *3 (D. Mont. March 22, 2013) (same); *Hartford Fire Ins. Co. v. McGhee*, 2010 WL 2179771, at *2-4 (N.D. Cal. May 27, 2010) (same); *Comm. Cas. Ins. Co. of Ga. v. Kinnan*, 2003 WL 21321373, at *4-5 (N.D. Cal. June 4, 2003) (same).

51088933.5

determine a disputed question of fact that is at the heart of the underlying tort action." *Id.* As discussed below, the presumption applies here, and Riverport fails to rebut it.

## II. The Presumption Applies Because Riverport's Action and the Eiden Action Turn on the Same Factual Issues About Horizon's Treatment of Cecil.

### A. The Policy Exclusion Riverport Cites Points to Horizon's Treatment.

The Policy's plain language provides coverage for damages arising from Horizon's "performance of professional services[.]" [Policy, Doc. 2 at 12.] It excludes coverage for acts, errors, omissions, or violations occurring prior to the policy period only if they "might reasonably be expected to result in a claim or suit." [*Id.* at 21.] This exclusion is meant to preclude a policyholder from "engag[ing] in willful blindness by ignoring the high probability that his actions will result in a claim being filed against him." *Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, LLP*, 267 F.Supp.2d 601, 607-08 (E.D. Tex. 2003). In other words, it excludes acts, errors, omissions, or violations that one would expect to result in a claim, but not every action that could <u>conceivably</u> result in a claim. *Westport Ins. Corp. v. Lilley*, 292 F.Supp.2d 165, 172 (D. Me. 2003) ("[T]he touchstone is reasonableness, not conceivability.").[3]

Courts addressing this exclusion have applied it in three limited situations, where the policyholder:

(1) has a basis to believe he breached a professional duty, *see, e.g.*, *Navigators Spec. Ins. Co. v. Scarinci & Hollenbeck, LLC*, 2010 WL 1931239, at *15 (D.N.J. May 12, 2010);

(2) knew that his actions caused injury to the claimant, *Mt. Airy Ins. Co. v. Thomas*, 954 F.Supp. 1073, 1080 (W.D. Pa. 1997) (applying the exclusion where the policyholder failed "to prosecute his client's claim . . . and knew that the court had dismissed the client's claim on that basis"); or

---

[3] In Arizona, "exclusionary clauses are interpreted narrowly against the insurer." *Scottsdale Ins. Co. v. Van Nguyen*, 158 Ariz. 476, 479, 763 P.2d 540, 543 (App. 1988). Further, as the phrase "might reasonably be expected to result in a claim" is susceptible to more than one interpretation, the issue is to be resolved against Riverport. *First Amer. Title Ins. Co. v. Action Acquisitions, LLC*, 218 Ariz. 394, 397, 187 P.3d 1107, 1110 (2008) ("The court of appeals erred in saying that we have 'abandoned' the rule that ambiguities are construed against the insurer.").

4

(3)   knew that the claimant was dissatisfied or intended to bring a claim, *see, e.g.*, *Navigators*, 2010 WL 1931239 at *15 (applying the exclusion where a policyholder received notice of its client's dissatisfaction and an explicit threat of a lawsuit); *Low v. Golden Eagle Ins. Co.*, 2002 WL 99556, at *4 (Cal. App. Jan. 25, 2002) (same).

Conversely, if a policyholder had no reason to believe that it breached a duty, that it caused the claimant's injury, or that the claimant intended to bring a claim, then a reasonable person with those facts would have no reason to expect a claim. Riverport does not allege that Horizon knew, prior to the policy period, of dissatisfaction or intent to bring a claim. The only way Horizon may reasonably have expected a claim is if it breached a standard of care or caused Cecil's episode. These are the same factual questions that lie at the heart of the Eiden Plaintiffs' claims.

**B.    Riverport's Attempt to Distinguish the Issues in this Action from the Issues in the Eiden Action is Misleading.**

Riverport claims the Eiden Action is based only on events that took place before Cecil's episode, while Riverport's action is based solely on post-episode events: (1) Cenpatico's investigation, (2) Horizon's notice of Cecil's episode to its previous insurer, and (3) the declarations Horizon employees submitted with the insurance application. [Response, Doc. 33 at 8-9.] Riverport's supposed focus on these events is a transparent attempt to twist facts in order to survive this Motion.

**1.    Riverport's Conduct Throughout this Litigation Belies the Argument that it Cares Only About Post-Episode Events.**

Riverport makes numerous allegations in its Complaint about Horizon's treatment of Cecil. Riverport pointed specifically to Horizon's October 4, 2013 visit to Cecil as the "act, error, omission or violation" that might reasonably have been expected to result in a claim against Horizon. [Complaint, Doc. 1 at ¶ 55.] That visit, its appropriateness under the standard of care, and its causal relationship, if any, to Cecil's episode are issues that must be explored in the Eiden Action, risking inconsistent factual findings and adjudications.

Riverport has also disclosed 40 different witnesses, each of whom is expected to testify on their "knowledge of Horizon's treatment of [Cecil]."  [Riverport's Initial Disclosures, attached as Exhibit A, at 1-11.]  Similarly, in its first set of requests for production, Riverport sought reams of documents relevant only to Horizon's treatment of Cecil – many of which were produced or created in the Eiden Action:

- Documents related to Cecil's release from the Arizona State Hospital in 2012;
- Documents related to Horizon's care, treatment, and housing for Cecil;
- All pleadings, motions, memoranda, and orders filed in the Eiden Action;
- All discovery and deposition transcripts in the Eiden Action;
- All expert reports prepared in the Eiden Action;
- All correspondence between Horizon and the State of other defendants in the Eiden Action related to Horizon's treatment of Cecil.

[Riverport's First Set of RFPs to Horizon, attached as Exhibit B.]  Riverport is already litigating factual issues regarding Horizon's treatment of Cecil.  Consequently, Riverport's claim that these issues are somehow "irrelevant" rings false.

### 2. Cenpatico Reviewed the Pre-Episode Treatment of Cecil.

Although Cenpatico's investigation took place after Cecil's episode, it focused entirely on Horizon's pre-episode treatment of Cecil.  [*See* Oct. 11, 2013 Letter to J. Young, attached as Exhibit C.]  To the extent Riverport claims that Horizon might reasonably have expected a claim from the mere existence of an investigation (regardless of its substance or findings), that argument falls flat.  The investigation was a standard procedure Cenpatico performed when anything negative happened to a Horizon client, and statistically, these investigations are not predictive of subsequent claims against Horizon.  The investigation also did not address, or even contemplate, whether Horizon's treatment of Cecil caused his episode.  Further, as a potential defendant in any claim arising from Cecil's episode, Cenpatico had an incentive to find deficiencies – accurate or not – in Horizon's treatment.  Finally, because the investigation was not known to the Eiden Plaintiffs, it could only signal a potential claim by them if its findings accurately reflected the treatment, which they did not. Thus, the investigation raises fact issues overlapping the Eiden Action, militating a stay.

6

51088933.5

### 3. The Remaining Post-Episode Events Riverport Identifies Undermine Riverport's Position.

The other two post-episode events that Riverport points to actually support Horizon's position. Horizon did not provide notice of Cecil's episode to its previous insurer, Arch Insurance Company ("Arch") until it received the Eiden Plaintiffs' claim during the policy period, demonstrating that Horizon did not expect a claim until the policy period. Indeed, Riverport's own timeline shows this. [Response, Doc. 33 at 7.]

Similarly, the declarations of Horizon employees, which stated that all "incidents" and "claims" had been reported to Horizon's prior insurer, did not show that Horizon might reasonably have expected a claim. In fact, they show that Horizon had no suspicion that its treatment of Cecil had any link to his episode.

### C. The Presumption Attaches.

In sum, Riverport claims that its arguments stem from post-episode events, but its conduct and arguments prove this to be false. Riverport has raised factual issues regarding Horizon's pre-episode treatment of Cecil and must address these issues to argue the merits of its position. As these issues are being litigated in the Eiden Action, there is a presumption in favor of staying or dismissing this action.

### III. The *Brillhart* Factors Do Not Rebut the Presumption Favoring Abstention; They Support Abstention.

Once the presumption is triggered, Riverport has the burden of showing that the *Brillhart* factors rebut the presumption. *Cont'l Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1373-74 (9th Cir. 1991) (finding that the *Brillhart* factors did not rebut the presumption in favor of state court adjudication), *overruled on other grounds by Dizol, supra*. Riverport fails to make this showing.

### A. This Action Will Result in Needless Determination of State Law, Duplicative Litigation, and Entanglement of State and Federal Courts.

Riverport ignores factors courts use to identify a needless determination of state law: (a) this action involves insurance coverage, which Congress expressly left to states in the McCarran-Ferguson Act, *Robsac*, 947 F.2d at 1371; (b) Riverport could have

7

51088933.5

brought its action in state court (a factor that applies even if the insurer is not party to the pending state court action), *Aero Jet*, 2011 WL 4708857, at *4; and (c) federal interest is "at its nadir" in a diversity action like this one, *Robsac*, 947 F.2d at 1371; *Md. Cas. Co. v. Witherspoon*, 993 F.Supp.2d 1178, 1183 (C.D. Cal. 2014).  Instead of addressing these factors, Riverport raises two flawed arguments.

First, Riverport erroneously claims that there is no factual overlap with the Eiden Action.  As discussed at length above, this Court will unquestionably face the same factual issues as the *Eiden* court, Riverport's attempt to hide that fact notwithstanding.

Next, Riverport claims that its action raises no unsettled issues of state law.  The issues need not be "unsettled," however, to result in a needless determination of state law.  The Ninth Circuit has found that a needless determination of state law occurs where going forward "require[s] the district court to decide <u>basic issues of state law</u>." *R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011) (emphasis added); *see also Madrid v. Concho Elem. Sch. Dist. No. 6 of Apache Cty.*, 439 Fed.Appx. 566, 567 (9th Cir. 2011) (finding that this factor favored abstention where the plaintiff's "claim under the Declaratory Judgment Act requested <u>only contract-related relief</u>" (emphasis added)).

Regardless, Riverport's declaratory action does raise unsettled issues.  It will require the Court to determine what constitutes an "act, error, omission or violation which might reasonably be expected to result in a claim or suit," which has never before been addressed by an Arizona court. *B.D. Props. Hawaii, LLC v. Axis Surplus Ins. Co.*, 2014 WL 360004, at *4 (D. Haw. Feb. 3, 2014) (considering the interpretation of policy language an issue of "unsettled state law"); *Indian Harbor Ins. Co. v. Meridian Comm., Inc.*, 2007 WL 951281, at *3 (N.D. Cal. March 27, 2007) (finding the interpretation of a prior acts endorsement to be an issue of "unsettled state law").

Further, on the critical issues of duplicative litigation and federal-state entanglement, Riverport merely repeats its flawed "no-factual-overlap" argument.  If this matter goes forward, this Court and the *Eiden* court must both address whether

8

Horizon breached the standard of care and whether its treatment of Cecil caused Cecil's episode. There is thus a real risk of inconsistent rulings. *Monte Vista*, 2010 WL 447343, at *5 (finding entanglement where going forward would "raise[] the spectre of possible inconsistent adjudications"); *John Deere Ins. Co. v. Sanders Oldsmobile-Cadillac, Inc.*, 2007 WL 2317150, at *3 (E.D. Cal. Aug. 9, 2007) ("[T]he real possibility of inconsistent factual findings weighs in favor of [abstention].").

Moreover, Riverport makes no effort to address Horizon's argument that going forward in this matter will force Horizon to argue the same issues in two courts, using divergent strategies – disclaiming liability in the Eiden Action and seeking coverage for that liability here. *John Deere*, 2007 WL 2317150, at *4 (stating that a policyholder "should not be forced to litigate on two fronts"). Riverport also fails to address the fact that its request to be released from responsibility for defending a state court action risks entanglement between state and federal courts. *Owners Ins. Co. v. Young's Corral LLC*, 2011 WL 3759497, at *4 (D. Ariz. Aug. 25, 2011) (finding a risk of entanglement because "Plaintiff is requesting that this Court declare that it is no longer responsible for defending Young's Corral in the underlying case").

**B.**     **Riverport's Remaining *Brillhart* Arguments are Equally Meritless.**

Riverport ignores Horizon's cited cases that found an inference of forum-shopping when an insurer files a declaratory action in federal court instead of state court in spite of an underlying tort action pending in state court. *See Hungerford*, 53 F.3d at 1018; *Monte Vista*, 2010 WL 447343, at *3; *John Deere*, 2007 WL 2317150, at *3. Instead, Riverport merely cited to cases where courts declined to attach significance to the insurer's choice of a federal forum. [Response, Doc. 33 at 5-6.] Thus, this factor either supports abstention or, at the least, is neutral and does not rebut the presumption of abstention.

Similarly, Riverport does not attempt to address Horizon's cited cases supporting abstention where resolving a declaratory action would not settle the broader

9

controversy, including the issues of liability and damages in the underlying tort action. *Young's Corral*, 2011 WL 3759497, at *4; *Monte Vista*, 2010 WL 447343, at *4.

On the factors regarding the parties' convenience and the convenience of alternative remedies, Riverport claims that the proximity of the state and federal courts "militates against abstention" but then cites cases that found this fact merely neutral. *See Cornerstone*, 2013 WL 4051642, at *4 (finding that the convenience factor did not "meaningfully impact the jurisdictional analysis"); *Homebuyer*, 2012 WL 6200618, at *5 (finding proximity of courts irrelevant). Riverport also claims that forcing it to "start over" would be an inconvenience, but Horizon primarily seeks to stay this action until the Eiden Action is resolved, which eliminates the supposed inconvenience of "starting over." At any rate, this case is in its beginning stages and "starting over" would not be the inconvenience that Riverport makes it out to be – neither party has issued discovery beyond a single set of RFPs, to which neither party has yet responded.

Finally, Riverport baldly declares that this action will serve a useful purpose in clarifying the legal relations at issue. This District has rejected such an assertion. *Aero Jet*, 2011 WL 4708857, at *5 ("[T]his Court's jurisdiction will not serve a useful purpose because a declaratory judgment could readily be obtained in state court.").

Riverport does not identify a single factor that favors moving forward. Consequently, Riverport has failed to carry its burden of rebutting the presumption in favor of abstention.

## IV.   Issues of Judicial Economy and Fairness Favor a Stay.

The Court's inherent power to control its docket provides an additional legal justification to stay this action. *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). While Riverport argues that it "has the right" to file a declaratory action while the Eiden Action is still pending [Response, Doc. 33 at 13], this straw man argument was never at issue. The issue here is whether the Court should, under its inherent power to control its docket, stay this action in the interests of judicial economy or unfairness.

10

Next, Riverport claims that a stay would be "fundamentally unfair" because Riverport is defending the Eiden Action. [*Id*.] Defending Horizon in the underlying tort action, however, is Riverport's obligation under the Policy. Fulfilling a contract it drafted can hardly be considered an unreasonable harm.[4] By contrast, going forward will cause hardship and inequity for Horizon by forcing it to pursue divergent strategies in the two actions. *In re First Solar Derivative Litig.*, 2012 WL 6570914, at *2 (D. Ariz. Dec. 17, 2012) (finding that a stay is appropriate if going forward would force a party to pursue potentially divergent strategies).

Finally, Riverport continues to rely on the faulty premise that "there are no overlapping factual determinations and the coverage analysis does not depend on any facts at issue in the state court proceedings." [Response, Doc. 33 at 14.] This is far from true. Going forward will result in "simultaneous litigation [that] will increase the cost of the overall litigation in the near term." *In re First Solar*, 2012 WL 6570914, at *2 (granting a stay until the resolution of other proceedings arising from the same events). Allowing the *Eiden* court to resolve the overlapping issues, on the other hand, "will lead to prompt resolution of [Riverport's declaratory action], saving litigation costs and court resources in the long term." *Id.*

In sum, the Court should stay these proceedings because (a) it will simplify this action by resolving the key factual issues and possibly the action itself; (b) it will avoid the hardship and inequity that Horizon will experience if the action goes forward; and (c) it will not result in unreasonable prejudice to Riverport. Thus, for the foregoing reasons, Horizon respectfully requests that the Court grant its Motion to Stay the Proceedings or, in the Alternative, to Dismiss the Action.

---

[4] Riverport has asked to recoup costs incurred in such defense. Although this issue could easily be addressed after the Eiden Action is resolved, it appears from Riverport's argument here that it may be abandoning such a meritless pursuit.

11

DATED this 25th day of September, 2015.

**POLSINELLI PC**

By: */s/ Anthony W. Merrill*
    Eric Lynch
    Anthony Merrill
    One E. Washington St., Ste. 1200
    Phoenix, AZ 85004
    *Attorneys for Defendant*
    *Horizon Human Services, Inc.*

51088933.5

**CERTIFICATE OF SERVICE**

I certify that on September 25, 2015, I electronically transmitted a copy of foregoing document to the Clerk of Court, by using the CM/ECF System for filing.

By: */s/ Anthony W. Merrill*

51088933.5